### FLEMING, Temporary Controls Administrator, v. ASHBAUGH.
### No. 11423.

Circuit Court of Appeals, Ninth Circuit.
Jan. 13, 1947.

---

[1] See Wallace v. Hunter, 10 Cir., 149 F.2d 59.

Before DENMAN, HEALY, and BONE, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment holding appellant's predecessor Price Administrator Porter not entitled to recover damages in a suit under Section 205(e) of the Emergency Price Control Act of 1942, as amended by the Stabilization Extension Act of 1944, Public Law 388, 78th Congress, 50 U.S.C.A.Appendix, § 925(e), hereinafter called the Act, and dismissing the complaint.

The complaint below alleged that Maximum Price Regulation 164 establishes maximum prices for red cedar shingles where the shipments thereof originate at the mill rather than at a distribution yard; that between October 1, 1943, and February 15, 1944, appellee sold and delivered 3,149 squares of such shingles (a) shipment of which originated at a mill and not at a distribution yard; (b) that none of such purchases by appellee's customers was made for use or consumption other than in the course of trade or business; that the appellee received a price for each such delivery in excess of the maximum price established by the regulation; that the total of the overcharges amounted to $2,861.85; and that three times the aggregate amount of the overcharges equals $8,585.55. The answer denied allegations (a) and (b).

On the issue tendered whether the shipment "originates at the mill rather than at a distribution yard," appellant's brief claims error in the district court's holding in its order granting appellee's motion to dismiss, that appellant failed to prove that appellee's shipments of shingles had not "originated" from a distribution yard.

It was admitted that the sales of certain red cedar shingles were at a price higher than the maximum price under paragraph 1381.1 of the Administrator's regulations which provides

"§ 1381.1. Maximum prices for red cedar shingles. On and after June 29, 1942, regardless of any contract, agreement, or other obligation (a) Where the shipment originates at the mill rather than at a distribution yard, no person shall sell or deliver red cedar shingles, and no person shall buy

George Moncharsh, Deputy Administrator for Enforcement, David London, Director, Litigation Div., Albert M. Dreyer, Chief Appellate Branch, Harold Craske, Sp. Appellate Atty., OPA., all of Washington, D. C., William B. Wetherall, Reg. Lit. Atty. OPA., of San Francisco, Cal., for appellant.

Hibbard & Kleindienst, of Los Angeles, Cal., for appellee.

or receive red cedar shingles in the course of trade or business, at prices higher than the maximum prices set forth in Appendix A, incorporated herein as § 1381.11."

■ It is obvious from the reading of paragraph 1381.1 that the burden of proof upon the Price Administrator is to show that each of the shipments in question "originates at the mill rather than at a distribution yard." This regulation fixes no maximum price when the shipment is not from a mill, even though not from a distribution yard.

■ The evidence shows that the shipments first originated at the town of Toledo, Oregon, and that they came from a firm named Warrenton Shingle Co. Appellant's brief contends that he has shown that shipment from Toledo was from a mill by his, (plaintiff's) exhibit 1. This exhibit is of railway shipping documents which disclose no more than that firm's name as the shipper of the shingles from Toledo.

■ To meet this absence of proof, appellant-plaintiff contends that if the character of the origin of the shipment is "peculiarly within the defendant's knowledge," appellant is relieved of his burden and the burden of proof shifts to the appellee. We do not agree, but if such were the law it has no application here. There is no evidence that appellee, a lumber dealer in Los Angeles, knew whether the firm of Warrenton Shingle Co. of Toledo, Oregon, manufactured the shingles in their own mill there or merely bought shingles from small and large shingle makers and resold them from a distribution yard there, or merely sold in their own name the shingles owned by others as the others' agents. Also it is obvious that the character of the establishment at Toledo is not peculiarly within the knowledge of the appellee in Los Angeles. It is within the knowledge of and best provable by the testimony of the members of that firm and its employees at Toledo, Oregon.

■ The appellant having failed to maintain his contention with regard to the origin of the shipments from a mill in Oregon, contends they were in fact from two California cities. It appears that the shipments from the Oregon company were in railway cars diverted from their original destination by appellee to Bellflower and Riverside, California, and that possession of the shingles was taken by appellee on the railway tracks there. From there the deliveries of sales by the appellee were made from these shingles there in its possession. Assuming appellant's contention that these places may be deemed the shipments' origins, shipments from railway cars are not shipments from a mill and regulation 1381.1 does not create a maximum price for the shingles. To meet this situation appellant again attempts to attach to the shipments from the cars an origin at Toledo, Oregon. As seen, no shingle mill of the Toledo shipper is shown to have existed.

Since appellant has failed to maintain his burden of proof on issue (a), it is unnecessary to consider issue (b), that is, appellant's claimed error that the district court erred in holding appellant had not maintained his burden of proving that the purchases by appellee's customers were for use or consumption other than in the course of trade or business.

The judgment is affirmed.