**FLEMING, Adm'r, Office of Temporary Controls, v. FIR–TEX SALES CORPORATION et al.**

No. 5798.

District Court, S. D. California, C. D.

Feb. 20, 1947.

Austin R. Clapp, of San Francisco, Wadieh S. Shibley, of Oakland, and Arthur Lasher and Cassel Jacobs, both of Los Angeles, Cal., for plaintiff.

Eben & Jones, of Portland, Ore., for defendants.

HARRISON, District Judge.

The Price Administrator seeks to recover overcharges from forty sales of lumber made by the defendants between January 8 and April 29, 1946, alleging that all the sales complained of were governed by Revised Maximum Price Regulation 26 (hereinafter called RMPR–26) relating to Douglas fir and other West Coast lumber. Defendants answered that all of the sales were "distribution yard" sales, governed by RMPR–215, and that all of the charges were proper and within the terms of the latter regulation.

Dant & Russell Sales Agency, the defendant agency, was established in Los Angeles in 1937. It operated as a combined wholesale and retail distribution yard until lumber became scarce and buyers took all they could get. During the time of the sales in question it was operating only as a wholesale yard. For all of these sales except one, the same procedure was followed.

Defendants purchased lumber in carload lots from various places in Washington, Oregon, and California, invoiced to the agency at its distribution yard. While the lumber was en route to the Los Angeles area, which took from seven to twenty-five days, defendants would notify a prospective purchaser that the lumber was available. If he wanted the lumber, defendants contacted the carrier and had the lumber diverted to the place where the lumber was to be delivered to the prospective buyer. The agency remained the consignee, and when the lumber arrived at the new destination it was unloaded, sorted, and stacked by defendants' agents or employees. Thereafter, the final formalities of sale were completed, from a fraction of a day up to eight days later.

In one sale, the lumber was unloaded from a ship on the dock at Wilmington, California, by employees of the shipper. From the dock it was transported one hundred yards by persons hired by defendants and stored. It was then sold to the buyer at distribution yard prices.

Until March 5, 1946, RMPR–215 provided that "a sale out of distribution yard stock means a sale made by a distribution yard for shipment of lumber which was a regular part of its stock at the time the order was taken". Thereafter, during the period of these sales, it provided that "A sale out of distribution yard stock means a sale made by a distribution yard for shipment of lumber which is a regular part of the distribution yard stock and which actually has been sorted, stored, and handled as regular yard stock by the distribution yard before delivery." In other words, after March 5, 1946, the lumber had to be stored, sorted, and handled before delivery to the buyer, whereas before then it only had to be a part of yard stock before sale. RMPR–26 does not apply to sales out of distribution yard stock. RMPR–215 allows distribution yards to add to the sale price the cost of shipping to the yard from the mill, plus a markup for handling. RMPR–215 is involved only to the extent that its description of a "distribution yard sale" clarifies or limits RMPR–26.

■ The only issue before this court is whether, on the facts stipulated, the sales were direct-mill shipments under RMPR–26, § 3(a), which provides that "A shipment is regarded as originating at a mill if the lumber reaches the purchaser without ever becoming an integral part of the stock of a distribution yard". The burden of showing that they were such rests on the government. Fleming v. Ashbaugh, 9 Cir., 158 F.2d 826.

The defendants took the orders from the mill, and actually received the lumber into their possession. The lumber was diverted to the site where it was to be used, but only into the possession of the defendant sellers, not to the buyer. There was no sale up to that time. There would be no completed sale until the sellers had performed all of their side of the bargain. The sellers unloaded the lumber on the buyer's premises but retained possession. The lumber was sorted and stored while remaining in the sellers' possession. Delivery of the goods from the sellers to the buyer was not made in some instances for eight more days.

■ What was the status of the lumber in this interval? It was "distribution yard stock", and nothing else. It was not sold. The buyer could reject it if it did not meet the specifications. The sellers would have borne the loss in case of fire or other catastrophe.

RMPR–26 (3) (a) provides that the regulation is applicable only if the lumber was not "distribution yard stock" at the time of sale. It is not necessary to consider whether the lumber was or was not part of "distribution yard stock" at the time the individual contracts to sell were entered into.

■ Neither RMPR–26 nor RMPR–215, in describing or defining a distribution yard say where the handling, sorting, and storing must take place. If a physical limitation were intended, the regulation could have provided that the activities must take place within the physical boundaries of a regular distribution yard. It did not so state and where a statute provides for penalties, courts do not help the plaintiff by giving it a liberal construction. Tiffany v. National Bank of Missouri, 18 Wall. 409, 21 L.Ed. 862, (where usury statute provided for recovery of double the amount of in-

904

terest usuriously paid, the statute was construed most strictly against the plaintiff).

■ It is the contention of the plaintiff that the shipments were direct-mill shipments inasmuch as the lumber was not physically delivered to the yard of the defendants, and distributed from the yard. The defendants actually performed all the handling that would have been required of them if actually delivered to their yard, but as a convenience to their customers they caused the cars to be diverted to reduce the cost of delivery to their customers. It would be ridiculous to compel them to do so, unless the regulation required such absurd procedure. It is not the function of this court to interpret a regulation to require the ridiculous, if such can be avoided. Take for instance the one shipment that arrived by water and was resold to a steamship company. To follow out plaintiff's interpretation it would have been necessary to physically transport this cargo of lumber from the dock to their yard, and at that point the steamship company could then have accepted delivery and rehauled the lumber to the same lock at which it originally arrived.

■ It is my view that whenever the lumber was delivered to the defendants it became a regular part of their yard stock and that the regulation does not require a physical commingling. A merchant's stock in trade does not necessarily have to be on his shelves. Merchandise delivered to him on the freight platform or in storage is just as much a part of his stock as if it were within the four walls of his store. He treats it as such and carriers it on his inventory wherever it may be located.

Since the defendants were performing all of the services of a distribution yard at the time of sale in each of the sales complained of, the sales were made out of "distribution yard stock" within the meaning of that term as used in the regulations, and RMPR–26 does not apply to any of the transactions.

Bowles v. Lentin, 7 Cir., 151 F.2d 615, 619, upon which the government relies heavily is distinguished easily for in that case the defendant freely admitted that he had not acted as a distribution yard. There was no showing that the defendant in that case rendered any of the services of a dis-

tribution yard, other than ordering the lumber. In the present case, on the other hand, the defendants rendered every one of the services of a distribution yard. Since the proper concept of a distribution yard is one of services rendered rather than mere physical characteristics, it is apparent that the sales were distribution yard sales.

Defendants are entitled to judgment of dismissal and counsel for defendants is directed to submit forthwith proposed findings and judgment in accordance with this memorandum opinion.