## BROWN *v*. HIATTS.

1. Statutes of limitation of the several States did not run during the late civil war against the right of action of parties upon contracts made previous to, and maturing after, the commencement of the war.
2. Interest on loans made previous to, and maturing after, the commencement of the war ceased to run during the subsequent continuance of the war, although interest was stipulated in the contract.
3. These doctrines held in a case where a mortgagee, who was a citizen and resident of Virginia, one of the Confederate States, brought a suit, after the close of the war, upon a bond and mortgage executed by citizens of Kansas, one of the loyal States, previous to the war, but which matured a month after the commencement of the war.
4. It having been held that the civil war commenced in Virginia at the date of the proclamation of the President of intended blockade of her ports, April 27th, 1861, and to have ended, so far as the statutes of limitation are concerned, on his proclamation of its close, April 2d, 1866, the period between those dates must be deducted in the computation of the time during which the statute of Kansas had run against the right of action of the mortgagee on the said bond and mortgage.

APPEAL from the Circuit Court for the District of Kansas; the case being thus:

Brown filed a bill against Hiatt and wife to foreclose a mortgage, executed by the latter persons upon certain real property in Kansas, to secure their joint and several bond for $2400, with interest, and to obtain a sale of the mortgaged premises for its payment. The case was thus:

On the 29th of May, 1860, Brown, who was then and still is a citizen and resident of Virginia, being at the time in

Kansas, lent to the defendants, citizens of that State, the sum of $2000, at interest, at the rate of 20 per cent. a year, and took the bond in suit, payable in twelve months, for the amount, with the interest for the period included, making the sum of $2400, the whole drawing the stipulated interest after maturity.* As security for the payment of this bond with interest, and simultaneously with its execution, Hiatt and wife made and delivered to Brown the mortgage in suit, which covers three hundred and twenty acres, in the county of Leavenworth, in that State.

With the execution of the bond, and as further or collateral security for its payment, the defendant, Hiatt, assigned to the complainant a mortgage held by him upon certain real property in Kansas, executed by one Kenyon and his wife, to secure their joint note for $800, made in December, 1858, and payable in December, 1860, with interest at 6 per cent. a year. Upon this note there was then a credit of $75.

At the same time the defendant, Hiatt, also assigned to the complainant for the like further or collateral security a judgment rendered in his favor upon the foreclosure of a mortgage against one Perkins, in the District Court of the United States for the District of Kansas, on the 6th of June, 1859, for $763, and costs. This judgment drew 7 per cent. a year. The assignment was absolute in its terms, but it is admitted to have been executed as further or collateral security for the payment of the bond in suit.

The complainant, as stated, was at the time a citizen and resident of Virginia, and soon after the completion of the transaction in question he returned to that State, carrying with him the bond and mortgage, and retained them there in his possession until September, 1865. His residence was all this time in that portion of the State which was declared by the proclamation of the President to be in insurrection against the government of the United States, and was during the entire period of the war, until the surrender of the

---

* The law of Kansas, then in force, allowed parties to agree for the payment of any rate of interest on money due or to become due upon any contract.

Confederate forces by General Lee, under the domination of the Confederate government.

At the time the collaterals mentioned were assigned it was agreed, in consequence of the residence of the complainant in Virginia, that the defendant, Hiatt, should exercise such oversight over them as would be necessary to preserve them for the purposes for which they were appropriated, so that resort might be had to them if the mortgage to the complainant should prove to be insufficient security.

In April, 1861, some correspondence was had between the complainant and Hiatt respecting these collaterals, in which the complainant expressed a desire that the conveyance of any property struck off to him on a sale under the Perkins judgment, should show on its face that the property was only held as collateral security, and in which Hiatt stated that he had a prospect of paying off the mortgage to the complainant by the proceeds of work on a contract in Pennsylvania during the coming summer. No intimation was made on either side of any agreement, by which the collaterals were, under any circumstances, to be taken in satisfaction of the bond and mortgage in suit.

On the 17th of April, of that year, the Convention of Virginia passed the ordinance of secession, purporting to take the State from the Union. The proclamation of President Lincoln declaring a blockade of her ports followed on the 27th of the same month, and the war commenced. From the time of its recognition until its termination, or at least until the cessation of active hostilities, all commercial intercourse between the parties, except by special license of the government, was illegal, and by the act of Congress of July 13th, of that year, and the subsequent proclamation of the President, was expressly interdicted.

During this period of non-intercourse and early in 1863, Hiatt went to the office of the district attorney of the United States in Kansas, and stated to that officer that the complainant had large claims against persons living in the State, secured by mortgages on real property, which were subject

to confiscation; and in enumerating the debtors of the complainant, stated that he himself owed that person a considerable sum of money secured by mortgage on his farm, the amount of which he could not state, but it was the amount for which the mortgage was given, and that he would much prefer paying it to the government rather than to the complainant. This was the first intimation that the district attorney had that the complainant held any claims in Kansas subject to confiscation. Upon the suggestion thus made, that officer proceeded to examine the records of the county, and found among them the record of the bond and mortgage to the complainant. He thereupon instituted proceedings for their confiscation in the District Court of the United States for the District of Kansas, under the act of Congress of March 17th, 1862. To the information the defendants appeared and filed an answer, verified by the oath of Hiatt, in which they alleged that they were not indebted and had not been indebted to the complainant since May, 1861, upon the bond and mortgage executed by them. And they set up in substance that the bond and mortgage had been paid and satisfied by the Perkins judgment, or the property purchased under it, and the Kenyon note and mortgage, pursuant to a verbal agreement made at the time the bond and mortgage were executed.

Upon the trial of this question of payment and satisfaction, Hiatt produced what purported to be a letter from the complainant which supported the averment as to the agreement mentioned. The district attorney, believing the letter to be genuine and the testimony of Hiatt in support of it trustworthy, dismissed the proceedings, and instituted other proceedings for the confiscation of the Kenyon note and mortgage. These resulted in a sale of a part of the premises covered by that mortgage, and the proceeds of the sale were paid into court. In the meantime the Perkins judgment, owing to a defective acknowledgment of the mortgage on which it was given, proved to be entirely valueless, and the property upon which it was a lien, was sold to satisfy a prior incumbrance.

The present suit was commenced in February, 1867, and the defences made to it were substantially these:

1st. That a verbal agreement was entered into between the parties at the time the bond and mortgage were executed, by which the complainant was to take in their satisfaction, at the election of the defendants, the Perkins judgment and the Kenyon note and mortgage, and that the defendants, in 1862, made such election, which was acceded to and accepted by the complainant. The election thus made was alleged by the defendants to have been communicated to the complainant by letter, sent by mail, and his acceptance of the collaterals was alleged to have been contained in a letter received by mail, from him, in which he stated that he should henceforth hold the collaterals as his own property in satisfaction of the bond in suit. These letters were not produced by the defendants in this case, but were alleged to have been lost. And it appeared that communication by mail between that portion of Virginia in which Brown, the complainant, resided, and Kansas, ceased in 1861, and was not re-established until after the cessation of hostilities in 1865.

2d. That the right of the complainant to maintain the suit was barred by the statute of limitations of the State of Kansas, which requires a suit of this character to be brought within three years after the cause of action has accrued; and—

3d. That the Perkins judgment and Kenyon note and mortgage had become valueless, and were lost through the neglect of the complainant, and that he should, therefore, be charged with their full amount. The defendants also alleged that the debt against Kenyon was confiscated by judgment of the District Court as the property of the complainant.

The Circuit Court held that the alleged verbal agreement was not proved, and that the statute of limitations of Kansas did not run against the right of action of the complainant during the continuance of the civil war, but allowed the amount of the Kenyon note, alleged to have been confis-

cated by the proceedings taken for that purpose, on the demand of the complainant, and gave judgment for the balance and a decree for the foreclosure of the mortgage and sale of the premises, if the amount found due was not paid within a designated period. From this decree both parties have appealed to this court.

*Messrs. Conway Robinson and E. S. Brown, for Brown; Mr. A. G. Riddle, for the Hiatts.*

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

We fully concur in the conclusion of the Circuit Court that the alleged verbal agreement between the parties that the complainant should take the Perkins judgment and Kenyon note, at the election of the defendants, in satisfaction of the bond and mortgage in suit, is not proved. The existence of any agreement of the kind is positively denied by the complainant, and all the circumstances of the case show conclusively to our minds that no such agreement was ever made. In the first place the amount of both collaterals, assuming them to have been perfectly good, was, at the time the loan was made, less by several hundred dollars than the amount lent. Then the loan drew twenty per cent. interest a year while one of the collaterals bore interest only at six per cent., and the other at seven per cent. a year, so that the excess of the amount due on the loan over the amount due on the collaterals was constantly increasing. In the second place the letter which Hiatt pretends to have received from the complainant recognizing the alleged verbal agreement and accepting the election of the defendants, was not produced, and the complainant denies under oath that he ever wrote such a letter. The latter's testimony is corroborated by the fact that communication by mail, by which means Hiatt pretends to have received the letter, had long before ceased between that portion of Virginia in which the complainant resided and the loyal portion of the United States. In the third place the statements of Hiatt made to

several parties at different times were inconsistent with the existence of any agreement of the kind mentioned. In 1863 he stated to the district attorney that he owed the complainant the entire amount secured by his mortgage, and this was more than a year after the pretended satisfaction of the bond and mortgage in suit. The story put forth by the defendants is contradicted by the testimony of the complainant, is intrinsically improbable, and is irreconcilable with their repeated statements to others, and with their answer to the information in the confiscation proceedings. The case well illustrates the wisdom of the rule of law and the importance of its enforcement, that parol testimony of a verbal agreement shall not be permitted to vary or contradict the terms of a written contract made at the same time. The contract here in writing shows that the Kenyon note and mortgage were assigned as collateral security. The object of the testimony was to prove that a different agreement was really made, namely, that the note should be held as such security only at the option of the defendants, and at their election could be turned over with the Perkins judgment in full payment and satisfaction of the bond and mortgage. Had an objection been taken to the admissibility of this evidence it would undoubtedly have been excluded.

We concur also with the Circuit Court in its ruling, that the statute of limitations of Kansas did not run against the right of action of the complainant during the continuance of the civil war. That statute required the action to be brought within three years after the cause of action accrued, and it constituted a rule of decision in the National courts equally as in the courts of that State. The cause of action in this case accrued on the 29th of May, 1861. At that time the civil war embraced Virginia, or at least that portion of the State in which the complainant resided.

It was held in the case of *The Protector*,* that the war began in that State at the date of the proclamation of intended blockade of her ports by the President. That was the first public act of the executive in which the existence of war in

---

* 12 Wallace, 700.

that State was officially recognized, and to its date the courts therefore look as the commencement of the war. And so far as the operation of the statute of limitations is concerned, it was held in the same case that the war continued until proclamation was in like manner officially made of its close. That occurred on the 2d of April, 1866. The period, therefore, between the 27th of April, 1861, and the 2d of April, 1866, must be excluded in the computation of the time during which the statute has run against the right of action of the complainant on the bond and mortgage in suit, and being excluded the present suit is not barred.

It is unnecessary to go at length over the grounds upon which the court has repeatedly held that the statutes of limitation of the several States did not run against the right of action of parties during the continuance of the civil war. It is sufficient to state that the war was accompanied by the general incidents of a war between independent nations; that the inhabitants of the Confederate States on the one hand, and of the loyal States on the other, became thereby reciprocally enemies to each other, and were liable to be so treated without reference to their individual dispositions or opinions; that during its continuance all commercial intercourse and correspondence between them were interdicted by principles of public law as well as by express enactments of Congress; that all contracts previously made between them were suspended; and that the courts of each belligerent were closed to the citizens of the other.

Statutes of limitation, in fixing a period within which rights of action must be asserted, proceed upon the principle that the courts of the country where the person to be prosecuted resides, or the property to be reached is situated, are open during the prescribed period to the suitor. The principle of public law which closes the courts of a country to a public enemy during war, renders compliance by him with such a statute impossible. As is well said in the recent case of *Semmes* v. *Hartford Insurance Company*,* "The law im-

---

* 13 Wallace, 160.

poses the limitation and the law imposes the disability. It is nothing, therefore, but a necessary legal logic that the one period should be taken from the other."

As the enforcement of contracts between enemies made before the war is suspended during the war, the running of interest thereon during such suspension ceases. Interest is the compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention, and it would be manifestly unjust to exact such compensation, or damages, when the payment of the principal debt was interdicted. The question whether interest should be allowed on such contracts during the period of war was much considered soon after the Revolution. In the case of *Hoare* v. *Allen*,* decided in 1789 by the Supreme Court of Pennsylvania, it was held that interest did not run during the war on a debt owing to an enemy, contracted previously. "Where a person," said the court, "is prevented by law from paying the principal, he shall not be compelled to pay interest during the prohibition." The legislation of Congress after the commencement of the War of the Revolution, like the legislation of 1861, prohibited commercial intercourse with the inhabitants of the enemies' country, and the court observed that the defendant could not have paid the debt to the plaintiff, who was an alien enemy, without a violation of the positive law of the country and of the law of nations, and that parties ought not to suffer for their moral conduct and their submission to the laws. The decision was followed by the same court in *Foxcraft* v. *Nagle*, in 1791. Similar decisions were rendered by the Court of Appeals of Virginia and the Court of Appeals of Maryland.

The counsel for the complainant attempts to draw a distinction between those contracts in which interest is stipulated and those to which the law allows interest, and contends that the revival of the debt in the first case, after the termination of the war, carries the interest as part of the

---

* 2 Dallas, 102.

debt; while in the latter case interest is allowed only as damages for the detention of the money. We are, however, of opinion that the stipulation for interest does not change the principle, which suspends its running during war. In the first case cited, from Pennsylvania, interest was stipulated in the contract. "A prohibition," says Mr. Justice Washington, in *Conn* v. *Penn*,* "of all intercourse with an enemy during the war, and the legal consequence resulting therefrom, as it respects debtors on either side, furnish a sound, if not in all respects a just reason, for the abatement of interest until the return of peace. As a general rule it may be safely laid down that wherever the law prohibits the payment of the principal, interest during the existence of the prohibition is not demandable."

Upon the third ground of defence we are unable to agree with the Circuit Court. We concur in its ruling that the complainant is not justly chargeable with any neglect in the collection of the collaterals. His residence within the Confederate States rendered it impossible for him to superintend proceedings for their enforcement. The Perkins judgment proved to be worthless in consequence of the defective acknowledgment of the mortgage, for the enforcement of which the judgment was rendered, which defect gave precedence to another mortgage, under which the property was sold and by which the proceeds were absorbed. The Kenyon note and mortgage were confiscated, and the premises, or a part of them, covered by that mortgage, were sold by the marshal, and the proceeds paid into court. That note and mortgage the complainant did not own; he held them only as collateral security for the payment of the bond of the defendants. They were owned by the defendant, Hiatt. He concocted a scheme to defraud the complainant, and invented the shallow story of an agreement with him to take the collaterals in satisfaction of the loan, although they were less than the loan in amount by several hundred dollars. By barefaced and impudent falsehood, and the production

---

* Peters's Circuit Court, 524.

of a fabricated letter purporting to be from the complainant, he induced the district attorney to believe that the bond and mortgage of the defendants had been paid and satisfied, and that the collaterals belonged to the complainant, and as his property their confiscation was decreed. Having thus led the public prosecutor to treat his own property as belonging to another, and to be confiscated as such, he must suffer the consequences of his own folly and crime. He cannot charge the loss of the collaterals thus caused to the complainant.

It follows from the views we have expressed that the judgment and decree of the Circuit Court must be reversed, and that court be directed to enter a judgment in favor of the complainant for the amount due on the bond in suit; such amount to be made up by adding to the principal the interest due to the date of the judgment, at the rate stipulated, deducting the period intervening between the 27th of April, 1861, and the 2d of April, 1866; and also a decree directing a sale of the mortgaged premises and the application of the proceeds to the payment of the amount found due, if such amount be not paid within such reasonable period as may be prescribed by the court.   And it is

So ORDERED.