TIFFANY v. NATIONAL BANK OF MISSOURI.

Under the thirtieth section of the National Banking Act, which enacts that National banks "may take, receive, reserve, and charge on any loan . . . interest at the rate allowed by the laws of the State or Territory where the bank is located, *and no more;* except that where, by the laws of any State, a different rate is *limited* for banks of issue, organized under State laws, the rate so limited shall be allowed for associations organized in any such State under the act:" National banks may take the rate of interest allowed by the State to natural persons generally, and a higher rate, if State banks of issue are authorized by the laws of the State to take it.

ERROR to the Circuit Court for the District of Missouri.

Tiffany, trustee of Darby, a bankrupt, brought an action of debt in the court below against the National Bank of Missouri, a corporation organized under the National Banking Act of June 3d, 1864, to recover under the provisions of the thirtieth section of the act twice the amount of interest paid by the said Darby, on certain loans made by the bank to him before he was adjudged a bankrupt. The ground of the action was, that the interest reserved and paid

was 9 per cent.; a rate averred to be greater than the amount allowed by law, to wit, 8 per cent.

The provisions of the thirtieth section of the act, under which the suit was brought, are as follows:

"Every association organized under this act, may take, receive, reserve, and charge on any loans . . . *interest at the rate allowed by the laws of the State or Territory where the bank is located, and no more;* except that where, by the laws of any State, a different rate *is limited* for banks of issue organized under State laws, the rate *so limited* shall be allowed every association organized in any such State under this act. And when no rate is fixed by the laws of the State or Territory, the bank may take, receive, reserve or charge a rate not exceeding 7 per centum. . . .

"And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of interest thus paid from the association taking or receiving the same." . . .

In Missouri, the banks of issue, organized under the State laws, are *limited to* 8 *per cent.*, but the rate of interest *allowed* by the laws of the State generally *is* 10 *per cent.* As already signified, this bank had taken 9 per cent.

On demurrer the question was, whether the National banks in Missouri were allowed to charge more than 8 per cent. The court below adjudged that they were.

*Mr. S. Knox, for the appellant; Mr. J. O. Broadhead, contra.*

Mr. Justice STRONG delivered the opinion of the court.

In an action like the present, brought to recover that which is substantially a statutory penalty, the statute must receive a strict, that is, a literal construction. The defendant is not to be subjected to a penalty unless the words of the statute plainly impose it. The question, therefore, is whether the thirtieth section of the act of Congress of June 3d, 1864, relative to National banking associations, clearly prohibits such associations in the State of Missouri from re-

serving and taking a greater rate of interest than 8 per cent., the rate limited by the laws of that State to be charged by the banks of issue organized under its laws. It is only in case a greater rate of interest has been paid than the National banking associations are allowed to receive that they are made liable to pay twice the interest. The act of Congress enacts that every such association "may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State or Territory where the bank is located, and no more; except that where, by the laws of any State, a different rate is limited for banks of issue, organized under State laws, the rate so limited shall be allowed for associations organized in any such State under the act." What, then, were the rates of interest allowed in Missouri when the loans were made by the defendants that are alleged to have been usurious? It is admitted to have been 10 per cent. per annum, allowed to all persons, except banks of issue organized under the laws of the State, and they were allowed to charge and receive only 8 per cent.

The position of the plaintiff is, that the general provision of the act of Congress that National banking associations may charge and receive interest at the rate allowed by the laws of the State where they are located, has no application to the case of these defendants, and that they are restricted to the rate allowed to banks of issue of the State, that is, to 8 per cent. This, we think, cannot be maintained. The act of Congress is an enabling statute, not a restraining one, except so far as it fixes a maximum rate in all cases where State banks of issue are not allowed a greater. There are three provisions in section thirty, each of them enabling. If no rate of interest is defined by State laws, 7 per cent. is allowed to be charged. If there is a rate of interest fixed by State laws for lenders generally, the banks are allowed to charge that rate, but no more, except that if State banks of issue are allowed to reserve more, the same privilege is allowed to National banking associations. Such, we think, is the

fair construction of the act of Congress, entirely consistent with its words and with its spirit. It speaks of allowances to National banks and limitations upon State banks, but it does not declare that the rate limited to State banks shall be the maximum rate allowed to National banks. There can be no question that if the banks of issue of Missouri were allowed to demand interest at a higher rate than 10 per cent. National banks might do likewise. And this would be for the reason that they would then come within the exception made by the statute, that is, the exception from the operation of the restrictive words "no more" than the general rate of interest allowed by law. But if it was intended they should in no case charge a higher rate of interest than State banks of issue, even though the general rule was greater, if the intention was to restrict rather than to enable, the obvious mode of expressing such an intention was to add the words "and no more," as they were added to the preceding clause of the section. The absence of those words, or words equivalent, is significant. Coupled with the general spirit of the act, and of all the legislation respecting National banks, it is controlling. It cannot be doubted, in view of the purpose of Congress in providing for the organization of National banking associations, that it was intended to give them a firm footing in the different States where they might be located. It was expected they would come into competition with State banks, and it was intended to give them at least equal advantages in such competition. In order to accomplish this they were empowered to reserve interest at the same rates, whatever those rates might be, which were allowed to similar State institutions. This was considered indispensable to protect them against possible unfriendly State legislation. Obviously, if State statutes should allow to their banks of issue a rate of interest greater than the ordinary rate allowed to natural persons, National banking associations could not compete with them, unless allowed the same. On the other hand, if such associations were restricted to the rates allowed by the statutes of the State to banks which might be authorized by the State laws, un-

friendly legislation might make their existence in the State impossible. A rate of interest might be prescribed so low that banking could not be carried on, except at a certain loss. The only mode of guarding against such contingencies was that which, we think, Congress adopted. It was to allow to National associations the rate allowed by the State to natural persons generally, and a higher rate, if State banks of issue were authorized to charge a higher rate. This construction accords with the purpose of Congress, and carries it out. It accords with the spirit of all the legislation of Congress. National banks have been National favorites. They were established for the purpose, in part, of providing a currency for the whole country, and in part to create a market for the loans of the General government. It could not have been intended, therefore, to expose them to the hazard of unfriendly legislation by the States, or to ruinous competition with State banks. On the contrary, much has been done to insure their taking the place of State banks. The latter have been substantially taxed out of existence. A duty has been imposed upon their issues so large as to manifest a purpose to compel a withdrawal of all such issues from circulation. In harmony with this policy is the construction we think should be given to the thirtieth section of the act, of Congress we have been considering. It gives advantages to National banks over their State competitors. It allows such banks to charge such interest as State banks may charge, and more, if by the laws of the State more may be charged by natural persons.

The result of this is that the defendants, in receiving 9 per cent. interest upon the loans made by them, have not transgressed the act of Congress, consequently they are under no liability to the plaintiff.

JUDGMENT AFFIRMED.