James W. PARTAIN et al., Plaintiffs,

v.

The **FIRST NATIONAL BANK OF MONTGOMERY**, a Body Corporate, Defendant.

Civ. A. No. 3419–N.

United States District Court,
M. D. Alabama, N. D.

Nov. 23, 1971.

Robert S. Vance, Callaway & Vance, Birmingham, Ala., for plaintiffs.

Robert E. Steiner, III, Steiner, Crum & Baker, Montgomery, Ala., for defendant.

## ORDER

JOHNSON, Chief Judge.

This cause is submitted upon the motion of the defendant, The First National Bank of Montgomery, for summary judgment. Plaintiffs assert that various factual matters remain in controversy, including such questions as the criteria for the extension of credit, the use of credit cards and the manner in which interest is computed. Inasmuch as the plaintiffs have accepted defendant's computation of the interest they were charged, it would appear that these questions are not now relevant.[1] The only issue presented upon this submission is whether The First National Bank was authorized to charge the rates which plaintiffs agree they were charged.

Plaintiffs brought this class action against the bank seeking, in essence, (1) a declaration that the imposition by defendant of finance charges in excess of eight percent in connection with its bank credit card operation (Bank-Americard) is usurious and (2) relief in the amount of $3,500,000.00 plus interest, attorney fees and costs. Relying upon the venerable authority of Tiffany v. National Bank of Missouri, 85 U.S. 409, 18 Wall. 409, 21 L.Ed. 862 (1873), particularly as that case is explained by National Bank of Gloversville v. Johnson, 104 U.S. 271, 26 L.Ed. 742 (1881), defendant contends that the national banks of a state are authorized by the National Bank Act to charge the highest rate of interest for any sort of lending permitted by that state. *See* Title 12, Section 85, United States Code. Thus, since small loan companies in Alabama are allowed to impose an effective rate

1. According to the affidavits of Edward Herbert, Senior Vice President of the defendant, each plaintiff incurred, in connection with his credit card transactions, finance charges of between 14.7 and 17.3 percent.

of 36 percent on loans up to $300, the defendant asserts that it may charge up to this rate in all aspects of its lending. *See* Title 5, Section 290, Alabama Code.

Plaintiffs concede that "National banks have been National favorites." Plaintiffs have advanced, however, an argument which would reach a somewhat less all-encompassing result than the theory of defendant. The thrust of the theory is that national banks are authorized to charge the highest rate of interest allowed for any type of lending so long as the terms of the loan are restricted to those applicable to a lender authorized to charge that rate. Thus, on loans up to $300 the banks could charge the small loan rate but would have to follow the rates of other lenders for loans of more than $300.

This theory is not inconsistent with the result reached in *Tiffany*. There the state banks were limited to eight percent while the rate allowed generally was ten percent. There apparently was no special rate at that time for small loans. Thus, *Tiffany* does not deal with differentials in rate based on the amount of the principal, that is, small loans vis-a-vis large loans, but rather with distinctions in lenders, state banks vis-a-vis "natural persons."

The Comptroller of the Currency's Manual, relied upon rather heavily by defendant, appears to be consistent with plaintiffs' argument. Paragraph 7310 provides:

> A national bank may charge interest at the maximum rate permitted by state law to any competing state-chartered or licensed lending institution. If state law permits a higher interest rate *on a specified class of loans,* a national bank *making such loans* at such higher rate is subject only to the provisions of state law, relating to such class of loans that are material to the determination of the interest rate. For example, a national bank may lawfully charge the highest rate permitted to be charged by a state-licensed small loan company or Morris

plan bank, without being so licensed. (Emphasis added.)

The language of the manual also seems to restrict defendant to the policy of charging no more than is authorized for the particular size or class of loan.

The recent case of Northway Lanes v. Hackley Union National Bank and Trust Company, 334 F.Supp. 723 (W.D.Mich. 1971) also provides some authority for plaintiffs. This case dealt, among other things, with the question of whether closing charges could be levied by a national bank in addition to the maximum rate of interest. The state statute allowed savings and loan associations to make such charges. Only after determining that savings and loan associations and national banks are competing institutions for the class of loan in question did the court authorize the bank to levy such a charge. From this it may be concluded that national banks may charge as much as a *competing institution.* To be competing, however, the other institution must be authorized to make such loans. Again, the small loan rate would be permitted to the national banks only up to $300.

Nor is the legislative history as enunciated in *Tiffany* at odds with plaintiffs' view. In that case the Court said:

> It cannot be doubted, in view of the purpose of Congress in providing for the organization of National banking associations, that it was intended to give them a firm footing in the different States where they might be located. It was expected they would come into competition with State banks, and it was intended to give them at least equal advantages in such competition.
>
> \*     \*     \*     \*     \*     \*
>
> National banks have been National favorites.
>
> \*     \*     \*     \*     \*     \*
>
> In harmony with this policy is the construction we think should be given to the thirtieth section of the act of Congress we have been considering. It gives advantages to National banks

over their State competitors. It allows such banks to charge such interest as State banks may charge, and more, if by the laws of the State more may be charged by natural persons. *Id.* 85 U.S. at 412–413.

It is clear that there is a national policy favoring national banks. Yet there is an equally clear policy among the states that loans not be usurious. The plaintiffs' theory would seem to be more in accord with both interests. The national policy is favored by permitting national banks to charge the highest rate of interest allowed for a particular type of loan. The state policy is furthered in that no lender is allowed to charge more than that authorized for a particular level of borrowing.

Under defendant's theory national banks may charge the small loan rate for lending of any nature and amount. While this flexibility is certainly favorable to the banks, it does violence to the usury policy. Plaintiffs' view clearly presents a better balance of the competing interests.

Unfortunately for the plaintiffs, defendant has aptly pointed out that none of the plaintiffs ever had an outstanding balance of more than $300 on his account. This allegation is confirmed by Mr. Herbert's affidavit and attached exhibits. Therefore, the rates charged each named plaintiff are legally authorized since they fall well below the maximum authorized for small loans. The Court has no desire whatever to speculate upon the possible recovery of unnamed members of plaintiffs' class, particularly since no proof has been presented concerning them.

Accordingly, it is the order, judgment and decree of this Court that defendant's motion for summary judgment be and it is hereby granted as to the claims of James W. Partain, Walter E. Willis, Jr., and Mrs. Edna M. Wooten. It is the judgment of this Court that these plaintiffs take nothing from this action. This judgment is without prejudice to any unnamed members of plaintiffs' class proceeding in another action.

It is further ordered that the costs of this action be and they are hereby taxed to the plaintiffs for which execution may issue.