QUESTION: Are national banks and federal savings and loan associations in Florida required to report their interest rates to the Department of Banking and Finance pursuant to legislation setting an interest rate ceiling (usury rate)?
SUMMARY: Proposed state legislation to require national banks and federal savings and loan associations to report the rates of interest charged by them to the Department of Banking and Finance for the purpose of fixing an interest rate ceiling or usury rate would appear to impermissibly tie a state statute to the future actions of a federal entity, impermissibly intrude into a field not subject to state regulation, and conflict with exclusive control under paramount federal law. Your question is answered in the negative. The opinion request notes that legislation is being contemplated by which all banks, state and national, and all savings and loan associations, state and federal, would report interest rates charged by them on all extensions of credit to the Department of Banking and Finance. From the reported interest rates, an average rate of interest would be computed by the department to which a multiplier would then be applied to set an interest rate ceiling or usury rate. The applicable law governing the rate of interest chargeable by a national bank is contained in 12 U.S.C.A. s. 85. Such statute provides in pertinent part: Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the state . . . where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of the State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter. In Easton v. Iowa,188 U.S. 220, (1903), the Supreme Court noted: Our conclusions, upon principle and authority, are that Congress, having power to create a system of national banks, is the judge as to the extent of the powers which should be conferred upon such banks, and has the sole power to regulate and control the exercise of their operations; . . . . National banks may charge, under 12 U.S.C.A. s. 85, the rate allowed by the state to persons in the state, a rate 1 percent in excess of the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in such national bank's district, or the interest rate limited by the laws of the state to banks organized under such state's laws, whichever is greater. See Tiffany v. Bank of Missouri, 85 U.S. 409, (1874), and Northway Lanes v. Hackley Union National Bank and Trust Company,464 F.2d 855 (6th Cir. 1972). This being so, any state statute such as the one proposed would have no particular relevancy to and no practical or legal reason for the reporting of national bank interest rates, unless the effect of such statute is to provide a fixed usury limit in excess of the first two alternatives. The only net effect of including national banks in the reporting requirements for legislation of this nature, since a floating rather than a fixed usury limit is being provided for, would be to tie Florida's usury limit for banks to a rate 1 percent in excess of the discount rate on 90-day commercial paper in effect from time to time at the appropriate Federal Reserve Bank. The constitutionality of a state statute which in effect adopts the future actions of a federal entity is strongly suspect. See Florida Industrial Commission v. State, 21 So.2d 599 (Fla. 1945), and State v. Welch, 279 So.2d 11 (Fla. 1973). Further, since the type of legislation proposed necessarily requires the mandatory reporting of interest rates and therefore must expressly or impliedly carry with it the power to compel compliance, such law would appear to impermissibly intrude into a field not subject to state regulation or control as it pertains to national banks. Consequently, the proposed legislation to that extent would conflict with exclusive control under paramount federal law. As to the scope of state control over federal savings and loan associations, the Florida Supreme Court noted in Washington Federal Savings and Loan Association of Miami Beach v. Balaban,281 So.2d 15, 17 (Fla. 1973), that: By virtue of Title 12 U.S. Code Section 1464 et seq., the Federal Government has preempted the regulation and supervision of federal savings and loan associations and the organization, incorporation, examination and operation of the same and location of offices and branch offices of federal savings and loan associations. See also Pearson v. First Federal Savings and Loan Association, 149 So.2d 891 (Fla. 1963). While the enabling legislation for federal savings and loan associations (12 U.S.C.A. ss. 1461-1470) does not contain a provision similar to 12 U.S.C.A. s. 85, 12 U.S.C.A. s. 1425 does generally limit interest rates chargeable by any member of a Federal Home Loan Bank on home mortgage loans for single family dwellings to the maximum legal rate of interest applicable under state law to the given transaction. Since 12 U.S.C.A. s. 1464(f) makes each federal savings and loan association automatically a member of the local Federal Home Loan Bank upon its incorporation, the limitations of 12 U.S.C.A. s. 1425 would apply to all federal savings and loan associations. It has been held, however, that 12 U.S.C.A. s. 1425 does not create any private cause of action by a mortgagor against the mortgagee. Its sole effect is that any federal savings and loan association which violates a state usury law may not be admitted to or retained as a member of a federal home loan bank. See Chevalier v. Baird Savings Association,371 F. Supp. 1282 (E.D. Penn. 1974). On the other hand, 12 U.S.C.A. s. 1425 does provide a definitive rate ceiling in the absence of applicable state legislation. Such ceiling is that which is prescribed in writing by the Federal Home Loan Bank from time to time in the exercise of its discretion.
Since Florida has been deemed not to have an interest limitation applicable to federal savings and loan single family dwelling mortgage loans, see AGO 074-278, the Federal Home Loan Bank Board's prescribed rate ceiling would govern. Again, there would be no practical or legal reason for including or requiring the reporting of federal savings and loan interest rates, except to tie the state statute to the Federal Home Loan Bank Board's prescribed rate ceiling. The constitutionality of such a state statute would, as noted previously, be strongly suspect. Florida Industrial Commission v. State, supra, and State v. Welch, supra. Further, since this type of legislation proposed necessarily requires the mandatory reporting of interest rates and therefore must expressly or impliedly carry with it the power to compel compliance, such law would appear to impermissibly intrude into a field not subject to state regulation or control as it pertains to federal savings and loan associations. Consequently, the proposed legislation to that extent would conflict with exclusive control under paramount federal law.