ALDENS, INC., an Illinois Corporation,
Appellant,

v.

Thomas J. MILLER, as Attorney General
of the State of Iowa; and as Adminis-
trator of the Iowa Consumer Credit
Code, Senate File 1405, 65th General As-
sembly, 1974, Appellee.

No. 79–1262.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 5, 1979.

Decided Dec. 7, 1979.

B. A. Webster, Gamble, Riepe, Burt,
Webster & Davis, Des Moines, Iowa, for
appellant.

Tam B. Ormiston, Asst. Atty. Gen., Con-
sumer Protection Div., Des Moines, Iowa,
for appellee; Thomas J. Miller, Atty. Gen.,
Des Moines, Iowa, on the brief.

Before LAY, BRIGHT and McMILLIAN,
Circuit Judges.

LAY, Circuit Judge.

Aldens, Inc. appeals an adverse judgment
in a suit brought against Thomas J. Miller,
Attorney General of Iowa, seeking to have
section 537.1201 of the Iowa Consumer
Credit Code declared unconstitutional. Al-
dens, an Illinois corporation, asserts that it
operates a mail order business in all 50
states that is purely interstate in nature.
The credit agreement it uses, which is the
subject of this lawsuit, states that it is an
Illinois contract governed by Illinois law.
The credit charges comply with Illinois law,
but do not comply with rates applicable to
open-end credit financing in Iowa.[1] Aldens

---

1. The stipulation of facts provides:

   Aldens National Credit Agreement provides for a monthly finance charge of 1.75% on the portion of the "Average Daily Balance" of the account in the amount of $350 or less (an Annual Percentage Rate of 21%) and a monthly finance charge of 1% on that portion of such balance in excess of $350 (an Annual Percentage Rate of 12%). These rates are expressed in conformity with Sec-

contends Iowa's limitation on credit charges to Aldens' Iowa consumers constitutes an undue burden on interstate commerce in violation of the commerce clause of the Constitution. Aldens additionally alleges the Iowa Act, as applied to it, constitutes an attempt to exercise legislative authority extraterritorially in violation of the due process clause.

In upholding the Act, the federal district court, Judge William C. Hanson, presiding, relied upon three decisions of our sister circuits in which arguments identical to those Aldens makes here were rejected. *Aldens, Inc. v. Packel*, 524 F.2d 38 (3d Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Aldens, Inc. v. LaFollette*, 552 F.2d 745 (7th Cir.), *cert. denied*, 434 U.S. 880, 98 S.Ct. 236, 54 L.Ed.2d 161 (1977); *Aldens, Inc. v. Ryan*, 571 F.2d 1159 (10th Cir.), *cert. denied*, 439 U.S. 860, 99 S.Ct. 180, 58 L.Ed.2d 169 (1978). Since these decisions, the Supreme Court of the United States dismissed for want of a substantial federal question a case raising similar contentions. *Meierhenry v. Spiegel, Inc.*, S.D., 277 N.W.2d 298 (1979), *appeal dismissed*, —— U.S. ——, 100 S.Ct. 25, 62 L.Ed.2d 17 (1979).[2]

■ We find the district court reasoning dispositive of the issues Aldens raises. As Judge Hanson stated:

The purposes of the commerce clause, *inter alia*, include the notions that commercial enterprises in every state are entitled to substantial equality of access to a free national market, and that commercial intercourse should be protected from invidious restraints imposed by the legislatures of the several states. In the case *sub judice*, these purposes are not offended by the provisions delineated in Chapter 537. Adherence by foreign sellers to the maximum interest rate prescribed by the Iowa legislature does not restrict the flow of commerce between the states in any constitutional sense. A state may regulate intrastate activities occurring in connection with interstate commerce, and such legislation will not be subject to invalidation merely because of its incidental effect or indirect burden on interstate commerce.

. . . . .

Aldens argues that the increased cost of complying with the regulations contained in Chapter 537 seriously discriminates against Aldens' interstate sales to Iowa residents and thus unduly burdens interstate commerce. But the mere cost of doing business with Iowa residents to interstate sellers does not amount to a substantial burden on interstate commerce. Contrary to Aldens' conclusion, Iowa is not discriminating against interstate commerce through the operation of Chapter 537—for it is manifest that interstate mail order companies have access to the Iowa market on the very terms as any other seller, whether or not the particular seller is physically located in the state.

In contrast to the insubstantial burdens the operation of Chapter 537 imposes on interstate commerce, the interest of the State of Iowa in protecting its citizens from usurious interest rates in consumer credit transactions is considerable. And, it extends to credit sales solicited of and by Iowa residents in Iowa, notwithstanding that the contract terms declare the contract to be governed by the laws of the state in which the seller is located. It suffices to note that it is necessary for

---

tion 226.7(b)(5) of Regulation Z promulgated by the Federal Reserve Board under the Federal Truth-in-Lending Act. These rates are less than the maximum permitted by Illinois law.

Iowa law permits a maximum monthly finance charge of 1.50% on the amount of $500.00 or less, (an annual percentage rate of 18%), and 1.25% on amounts in excess of $500.00, (an annual rate of 15%). Iowa Code Ann. § 537.2202 (1971, 1979 Supp.). Section 537.1201, which is challenged here, deals with the territorial application of these provisions.

2. We agree with Aldens that the dismissal in *Meierhenry v. Spiegel, Inc.*, —— U.S. ——, 100 S.Ct. 25, 62 L.Ed.2d 17 (1979), must be read narrowly, and although we give it considerable weight, it does not necessarily represent a decision on the commerce clause and due process issues raised. *See Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977).

the states to enact reasonable consumer credit legislation to protect this public interest, for "in the power of the lender to relieve the wants of the borrower lies the germ of oppression." 45 Am.Jur.2d *Interest and Usury* § 4 (1969). Moreover, the federal Truth-in-Lending Act expressly recognizes the necessity of state regulations of interest rates in the field of consumer credit by providing:

> This subchapter does not otherwise annul, alter, or affect in any manner the meaning, scope or applicability of the laws of any State, including, but not limited to, laws relating to the types, amounts or rates of charges, or any element or elements of charges permissible under such laws in connection with the extension or use of credit, nor does this subchapter extend the applicability of those laws to any class of persons or transactions to which they would not otherwise apply.

15 U.S.C. § 1610(b).

In disposing of the due process argument Judge Hanson reasoned:

> The Court finds that the state does have an interest concerning the contractual relations of its residents with foreign mail order businesses. The state has a legitimate concern to shield its residents from usurious interest charges affixed to their consumer credit transactions with interstate sellers of merchandise; and, this is an interest which the state can safeguard by means of the legislative process notwithstanding the fact that the specific state action may have an effect on the interstate sales of the foreign seller. *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1949); *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777 (1943); *United States v. Aluminum Co. of America*, 148 F.2d 416 (2d Cir. 1945); *Osborn v. Ozlin*, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940). Aldens' imposition of a usurious interest charge violates the express public policy of the state that no Iowan shall pay more than that prescribed by Chapter 537 on his consumer credit transaction solicited in Iowa. This concern of the state to prohibit usurious loans to its residents is sufficient to surmount the burdens placed on interstate sellers to conform to the provisions of Chapter 537.

*Aldens, Inc. v. Miller,* 466 F.Supp. 379, 383–86 (S.D.Iowa 1979) (footnotes omitted).

Aldens urges that since the district court decision and adverse decisions of our three sister circuits, the Supreme Court "shattered" their reasoning in *Marquette National Bank v. First of Omaha Service Corp.,* 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978). That case held Congress, in the specific language of the National Bank Act, 12 U.S.C. § 85, intended to preempt state law. The holding makes it clear that the case is inapplicable to the questions presented here. Justice Brennen points out:

> The question for decision is whether the National Bank Act, Rev.Stat. § 5197, as amended, 12 U.S.C. § 85, authorizes a national bank based in one State to charge its out-of-state credit card customers an interest rate on unpaid balances allowed by its home State, when that rate is greater than that permitted by the State of the bank's nonresident customers.

> .    .    .    .    .

> [T]he National Bank Act, . . . and its descendants have been interpreted for over a century to give "advantages to National banks over their State competitors." *Tiffany v. Nat. Bank of Missouri,* 18 Wall. 409, 413, 21 L.Ed. 862 (1874). "National banks," it was said in *Tiffany,* "have been National favorites."

> .    .    .    .    .

> To the extent the enumerated federal rates of interest are greater then permissible state rates, state usury laws must of course give way to the federal statute.

> .    .    .    .    .

> [T]he protection of state usury laws is an issue of legislative policy, and any plea to alter § 85 to further that end is better addressed to the wisdom of Congress than to the judgment of this Court.

*Id.* at 301, 314, 318 n.31, 319, 99 S.Ct. at 542, 548, 550 n.31.

The bottom line, as urged by counsel for Aldens at oral argument, is its plea that this circuit create a conflict by stating its disagreement with the analysis of the Third, Seventh and Tenth Circuits, notwithstanding the Supreme Court's summary dismissal in *Meierhenry v. Spiegel, Inc.,* in order to enhance chances of Supreme Court review.

■ Each of these circuit courts carefully analyzed the constitutional questions; in our judgment their reasoning is impervious to further attack and needs no further amplification. Although we are not bound by another circuit's decision, we adhere to the policy that a sister circuit's reasoned decision deserves great weight and precedential value. As an appellate court, we strive to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow, thus avoiding unnecessary burdens on the Supreme Court docket. Unless our 11 courts of appeals are thus willing to promote a cohesive network of national law, needless division and confusion will encourage further splintering and the formation of otherwise unnecessary additional tiers in the framework of our national court system. See dissenting opinion of White, J., in *Brown Transport Corp. v. Atcon, Inc.,* 439 U.S. 1014, 99 S.Ct. 626, 58 L.Ed.2d 687 (1978), and the opinion of Burger, J., appended thereto.

JUDGMENT AFFIRMED.