Paula E. CAPPALLI,

v.

NORDSTROM FSB.

No. CIV. A. 00–4454.

United States District Court,
E.D. Pennsylvania.

May 16, 2001.

Stephan E. Andersson, Deutsch, Larrimore & Farnish, P.C., Philadelphia, PA, Richard B. Cappalli, Philadelphia, PA, for plaintiff.

David H. Marion, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for defedant.

## MEMORANDUM

O'NEILL, District Judge.

Plaintiff Paula Cappalli has brought this putative class action law suit against Nordstrom fsb alleging that the fee she was charged following a late payment to her Nordstrom's credit card account was in violation of the Home Owners' Loan Act, 12 U.S.C. § 1463(g) ("HOLA"). Presently before me is Nordstrom's motion under Fed.R.Civ.P. 12(b)(6) to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. For the reasons stated below defendant's motion will be granted.

## BACKGROUND

Plaintiff was issued a credit card by Nordstrom National Credit Bank, now known as Nordstrom fsb, a bank chartered under HOLA,[1] 12 U.S.C. §§ 1461 et seq. The Bank is located in Arizona. Among the provisions contained in the cardholder agreement signed by Cappalli were the following:

3. Promise to Pay. I agree to pay ... for all purchases and cash advances, including applicable Finance Charges and other charges or fees incurred by me....

4. Monthly Payments. Each month I agree to pay at least the Total Minimum Payment shown on my monthly billing statement no later than the Payment Due date shown on the monthly billing statement.

---

1. Plaintiff originally sued Nordstrom for violations of the National Bank Act, 12 U.S.C. §§ 21 et seq.; however, upon reviewing the submissions of the parties it is clear that the Bank is governed by HOLA. I will consider plaintiff's claim as if she had alleged violations of 12 U.S.C. § 1463(g).

6.(d) The Monthly Periodic Rate of Finance Charge on my account is 1.75% (corresponding Annual Percentage Rate 21%).

11. Late Payment Fee. If the "Current Due" shown on my monthly billing statement ... is not paid within 10 days after the scheduled Payment Due date shown on my monthly billing statement, [the Bank] may charge me and I agree to pay a Late Payment fee of $20.

15. Governing Law. I understand that this Agreement is governed by and construed in accordance with the laws of the United States. To the extent that state law applies to this Agreement, this Agreement will be governed by the laws of the state of Arizona.

Plaintiff received a billing statement from the Bank in April, 2000, that showed an unpaid balance of $101.72, due by May 13, 2000, for purchases made at a Nordstrom's Department Store in Pennsylvania. On May 29, 2000 plaintiff's husband mailed a check to the Bank in the amount of $101.72. Cappalli received her next statement from the Bank in June, 2000, which showed a new balance of $22.88. This new balance was comprised of a late payment fee of $20, and periodic finance charges that had accrued since plaintiff's April monthly statement totaling $2.88. Plaintiff contends that the amount billed by defendant in June represents an interest payment of 391% in violation of her cardholder agreement and HOLA. Plaintiff also alleged violations of the Arizona Consumer Loan Act, Ariz.Rev.Stat. §§ 6–601 et. seq., and the Arizona usury statute, Ariz.Rev.Ann. § 44–1201, but has voluntarily withdrawn all state law claims as-serted in her complaint. (Pl.'s Opp. Br. at 18).

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *See Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). In deciding the motion I must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the [non-moving party]." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A claim may be dismissed on 12(b)(6) grounds only if the plaintiff cannot demonstrate any set of facts in support of the claim that would entitle her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In order to survive a 12(b)(6) motion, plaintiff must make sufficient allegations to support her claim, but does not need to demonstrate that ultimately she will prevail on the merits. *Id.*

## DISCUSSION

■ The parties agree that the Bank is governed by section 1463(g) of HOLA which provides: "Notwithstanding any state law, a savings association may charge interest on any extension of credit ... at the rate allowed by the State in which the association is located...." This provision authorizes the Bank to impose interest charges allowed by the laws of its home state, Arizona, on out-of-state customers such as the plaintiff. It does not matter whether those charges violate Pennsylvania usury laws so long as the charges are "interest" and thus within the scope of section 1463(g). *See Spellman v. Meridian Bank,* No. 94–3203, 1995 WL 764548 at *15, *16 (3rd Cir.1995)[2] (interpreting the

---

**2.** The Court of Appeals granted a rehearing en banc and vacated the panel opinion in

*Spellman,* but the appeal was dismissed after an intervening Supreme Court ruling deter-

provisions of the National Bank Act, 12 U.S.C. § 85).[3] In *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996), the Supreme Court held that late fees are to be considered "interest" under the federal banking laws and therefore can be "exported" to customers in other states.

The Bank asserts that it was operating under section 44–1201(A) of the Arizona Revised Statutes when it assessed late fees to Cappalli. Section 44–1201(A) states in relevant part: "Interest on any loan ... or other obligation shall be at the rate of ten percent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." The Bank contends that since Cappalli agreed to the provisions of her cardholder agreement in writing its provisions are legal under Arizona law and therefore legal under § 1463(g) of HOLA. Cappalli responds that the late fees charged by the Bank impermissibly raised the level of interest above the amount agreed to in her *cardholder agreement in* violation of section 44–1201(A). Further, Cappalli asserts that even if the Bank complied with 44–1201(A) this section is modified by other state statutes including sections 44–1205(B) and 44–6002(F), which place ceilings on late fees for "revolving loan accounts" and "retail charge account agreements." The Bank disagrees, but

contends that even if those statutes do modify section 44–1201 the section applicable to the Bank is section 44–1205(C). That section provides that in addition to a "late payment or delinquency charge," interest not to exceed the maximum rate set by contract may be charged on the unpaid balance of a "credit card revolving account."

Under the terms of her cardholder agreement Cappalli was to be assessed a finance charge on outstanding balances with an annual percentage rate ("APR") of twenty-one percent. Cappalli's contends that since late fees are considered "interest" for purposes of exportation under *Smiley*, and the APR used to calculate the finance charge is what is commonly understood as "the annual interest rate" on a credit card, the Bank is prohibited from assessing a late fee in any amount that would raise the total payment made by the customer above an APR of twenty one percent of the previous month's balance. In other words, plaintiff argues that the APR is the "rate of interest agreed to" under section 44–1201(A) and the assessment of late fees to Cappalli violated that contract. Specifically, Cappalli views the $22.88 as interest charged on a loan of $101.78, the amount owed on her overdue balance, which, according to Cappalli, amounts to an "effective annual interest charge" of $397.67 or 391%.

mined the underlying substantive issue and the parties resolved their differences. While the *Spellman* Court's decision may not be binding on me I nonetheless find its analysis of the National Bank Act persuasive.

**3.** Section 85 of the National Bank Act states in relevant part: "Any association may ... charge ... interest at the rate allowed by the State ... where the bank is located...." Due to the similarity of the language and goals of the National Bank Act and HOLA, I consider them to be *in pari materia.* "The rule of *in pari materia*—like any canon of statutory construction—is a reflection of prac-

tical experience in the interpretation of statutes: a legislative body generally uses a particular word with a consistent meaning in a given context. Thus, for example, a later [A]ct can be regarded as a legislative interpretation of an earlier [A]ct in the sense that it aids in ascertaining the meaning of the words as used in their contemporary setting, and is therefore entitled to great weight in resolving any ambiguities and doubts." *Erlenbaugh v. U.S.*, 409 U.S. 239, 243–44, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972)(internal citations omitted).

### A. Federal Law

■ Cappalli's assertion that the aggregate interest rate is 391% is based upon on *Smiley* and 12 C.F.R. § 560.110(a),[4] which plaintiff contends "instruct that we can ascertain the rate of interest charged by a lender which has received interest in absolute amounts simply by adding up all the interest collected, by determining the amount and time of the loan, and, with those three numbers in hand, by calculating the annual interest rate using a simple division: yearly interest charged ÷ yearly amount loaned." (Pl.'s Opp. Br. at 11). Whether or not this might be an acceptable method for calculating some sort of overarching interest rate, there is nothing in either *Smiley* or § 560.110(a) that requires that the finance charge assessed on outstanding balances be treated as a ceiling that controls all other terms of the cardholder agreement that might fall under the definition of "interest." *Smiley* and § 560.110(a) simply provide clarification as to what types of charges a national bank may "export" to customers in other states under § 1463(g) of HOLA. Neither requires a calculation of interest in "absolute amounts." The 21% APR and the twenty dollar late fee are provided for separately in the agreement. One provision authorizes the Bank to impose a periodic finance charge when a cardholder carries a balance on his/her account from month to month. The other provision authorizes the Bank to impose a late fee based on plaintiff's failure to make the "Current Due" payment within ten days after the payment due date. The fact that each of these fees falls under the definition of "interest" for exportation purposes does not mean that the Bank may not collect both of them. In fact, as the Bank points out, under the Truth in Lending Act and its accompanying regulations, the Bank is explicitly prohibited from including late fees within the APR. TILA, 15 U.S.C. §§ 1601 et. seq.; Regulation Z, 12 C.F.R. §§ 226.14(b), 226.6.[5] Since the Bank is required to separate late fees and other charges from the APR used to calculate the finance charge I cannot conclude the APR was the maximum amount chargeable to plaintiff to the exclusion of any other charges provided for in the agreement. Stated another way, what would be the point of a requirement that other charges be stated separately in the agreement if the maximum amount that each cardholder could be charged was the fee agreed to for carrying an outstanding balance?

Plaintiff's brief is replete with statements such as: the congressmen who enacted the National Bank Act "would have been horrified" at the system utilized by the Bank, and "[o]ne may suspect that national retailers no longer care whether their merchandise sales earn profits, because their lending operations surely do;" operations which the plaintiff maintains "would make the greediest loan shark proud." (Pl.'s Opp. Br. at 5, 7). These statements neglect to mention that the fees are assessed only when the cardholder does not pay his/her bill on time. Cappalli states that the late fee "represents nothing more than additional payment for

---

**4.** 12 C.F.R. § 560.110(a) defines the term "interest" as used in 12 U.S.C. 1463(g).

**5.** 12 C.F.R. § 226.14(b) states that an APR for initial disclosures and advertising purposes "shall be computed by multiplying each periodic rate by the number of periods in a year." Section 226.6 requires the Bank to disclose to the cardholder in the agreement each of the

following items: (a)(2) "each periodic rate that may be used to compute the finance charge, the range of balances to which it is applicable, and the corresponding APR," (b) "The amount of any charge other than a finance charge that may be imposed as part of the plan. . . ."

the use of the lender's money." *Id.* at 17. However, in instances such as the one before me, where the outstanding balance is relatively small, in the absence of a late penalty a cardholder would have little incentive to pay his/her balance in a timely fashion. For example, the amount owed by Cappalli was $101.72. If a late fee were not assessed the APR would increase the amount owed the following billing cycle by approximately $1.78. While this amount may be insignificant to individual customers, without a late fee a bank with thousands of cardholders could have large sums of money extended in credit with no expectation of receiving reasonably prompt payment.

### B. Arizona Law

■ Cappalli alleges in the alternative that the late fees assessed by the Bank violate HOLA because they do not comply with the laws of Arizona. Plaintiff bases this contention, in part, on what she characterizes as the "indefinite and unknowable" nature of the interest charged to the cardholder if the Bank is permitted to assess late fees as a flat rate. (Pl.'s Opp. Br. at 11, 12). In other words, according to Cappalli, when measured as a percentage of an outstanding balance that varies from month to month the twenty dollar late fee makes the "actual" rate of interest fluctuate. This variance would be illegal under Arizona law, she argues, since 44–1201(A) calls for a "rate ... contracted for in writing," which she contends cannot occur because two minds could never agree on a rate that is variable. Plaintiff states: "Why require that a rate be expressed in 'writing' and be 'agreed to' if a lender can substitute a free-floating system of interest charges which depend upon whether it exercises its ... power to impose a late payment fee?" *Id.* at 12. I disagree.

First, I again note that the fee is imposed only when the cardholder does not pay his/her "Current Due" balance within ten days after the payment due date.

Second, the *Smiley* Court rejected the argument that late fees imposed on a credit card holder could not be considered "interest" because they did not vary based on the time period owed or the time period of delay. 517 U.S. at 745–46, 116 S.Ct. 1730. As a result, the *Smiley* Court upheld a South Dakota bank's right to charge a customer in California a fixed late fee for each monthly period in which the cardholder failed to make his/her minimum monthly payment. The statute relied upon by the South Dakota bank in *Smiley* was S.D. Codified Laws 54–3–1.1 (1995), which stated in relevant part:

> 54–3–1.1. Unless a maximum interest rate or charge is specifically established elsewhere in the code, there is no maximum interest rate or charge, or usury rate restriction between or among persons, corporations, ... or any other entities if they establish the interest rate or charge by written agreement.

Cappalli relies on *Smiley* to establish that late payments are a form of "interest." This is what *Smiley* holds, yet under Cappalli's reasoning the "written agreement" contained in section 54–3–1.1 of the South Dakota statute would not allow an agreement to a fixed late fee because of the uncertainty this would create for cardholders trying to calculate their "actual" interest rate. However, in determining that the South Dakota bank had the right to "export" late payments as interest the *Smiley* Court upheld the determination of the California Supreme Court that the agreement between the bank and the California cardholder was permissible under federal law. As this agreement contained a fixed late payment fee in addition to provisions for minimum monthly payments

the Court's decision in *Smiley*, at least implicitly, counsels against adopting Cappalli's reasoning concerning fixed late payment fees.

Third, plaintiff's concern with respect to the "unknowable" nature of the interest rate is one of her own creation. What could be more "definite and knowable" than a flat rate of $20? Ambiguity exists only if the cardholder agreement is construed as Cappalli suggests. In other words the rate is difficult to calculate only if one attempts to convert it into a payment owed over time as a percentage of a variable balance. However, as the *Smiley* Court stated: "the definition of 'interest' that we ourselves set out in *Brown v. Hiatts*, 82 U.S. 177, 15 Wall. 177, 185, 21 L.Ed. 128 (1873), decided shortly after the enactment of the National Bank Act ... contained no indication that it was limited to charges expressed as a function of time or of amount owing." *Smiley*, 517 U.S. at 745, 116 S.Ct. 1730. The late fee provision of Cappalli's cardholder agreement was an agreement to pay a charge consisting of a flat fee of twenty dollars. She also agreed to pay a finance charge on all outstanding balances. These rates were contracted for in writing and are therefore permissible under Arizona law, Az.Rev.Stat. § 44–1201. Since both fees qualify as interest exportable under HOLA § 1463(g) plaintiff has failed to allege a violation of HOLA.

▇ Plaintiff also contends that the Bank violated HOLA because it did not comply with Arizona Revised Statutes sections 44–1205(B) and/or 44–6002(F), each of which contain late-fee ceilings. These regulations modify the general requirements of section 44–1201(A). For example

section 44–1205 states that its provisions regulate among other things closed end loans of five thousand dollars or less, revolving accounts, check loan accounts and credit card revolving accounts. There are however lenders who fall outside the enumerated categories of these various regulations and are bound only by 44–1201(A).[6]

▇ In *Tiffany v. Nat'l Bank of Missouri*, 18 Wall. 409, 85 U.S. 409, 412–13, 21 L.Ed. 862 (1873), the Court established "the most favored lender doctrine" which authorized national banks to charge interest at the maximum rate permitted by state law for the state's most favored lender. "It allows [national] banks to charge such interest as [s]tate banks may charge, and more, if by the laws of the [s]tate more may be charged by natural persons." *Id.* at 413, 18 Wall. 409. In other words, if the best interest rate within a particular state is charged by a state bank, a national bank is entitled to charge that rate as well. However, if state law allows a "natural person" or some other type of lender to charge a more favorable interest rate for loans than the state's banks, the national bank may charge interest at the more favorable rate. As the *Tiffany* Court explained, this doctrine serves the congressional purposes of protecting national banks from "the hazard of unfriendly legislation by the States" and of promoting the notion that "[n]ational banks have been [n]ational favorites ..., established for the purpose, in part, of providing a currency for the whole country, and in part to create a market for the loans of the General government." *Id.* at 413, 18 Wall. 409. The most favored lender doctrine therefore allows the Bank to charge a borrower

---

**6.** *See Aros v. Beneficial Arizona Inc.,* 194 Ariz. 62, 977 P.2d 784, 786 (1999)(noting that because the legislature had amended 44–1201(A) to allow any interest rate agreed to in writing, there was no limit on the interest

defendant lenders could charge); *Morisson v. Shanwick Int'l Corp.,* 167 Ariz. 39, 804 P.2d 768 (Az.App.1990)(a private individual making a loan to a corporation was bound only by the provisions of section 44–1201(A)).

any "interest" charge allowed to any lender in Arizona. Whether or not certain kinds of state banks in Arizona must comply with other regulations such as 44–1205 or 44–6002, even if those banks perform substantially the same services as national banks organized under HOLA, is irrelevant to plaintiff's claim. Having held that the Bank has complied with the requirements of 44–1201(A), under the most favored lender doctrine I need not determine whether the Bank violated any other Arizona law.[7]

Plaintiff has failed to state a claim upon which relief can be granted and defendant's motion to dismiss will therefore be granted.

### ORDER

AND NOW, this day of May, 2001, having heard oral argument and reviewed the submissions of the parties, defendant Nordstrom fsb's motion to dismiss plaintiff Paula Cappalli's complaint is GRANTED and the complaint is DISMISSED.

---

**7.** I note that the Bank may also rely on the framework established under section 44–1205(C) of the Arizona Revised Statutes which explicitly permits a late penalty to be charged in addition to a periodic finance charge on unpaid balances for "credit card revolving accounts." Plaintiff's contention that the card issued to Cappalli by the Bank is not a "credit card" within the meaning of 44–1205(C) is irrelevant. Clearly there are some lenders under Arizona law who may charge a late fee as well as a periodic interest rate on unpaid balances; therefore under the most favored lender doctrine the Bank may do so as well.