**STATE of Iowa ex rel. Richard C. TURNER, Attorney General, Appellant,**

v.

**FIRST OF OMAHA SERVICE CORPORATION OF OMAHA, Nebraska d/b/a Bank Americard, and Central National Bank & Trust Company, Des Moines, Iowa, Appellees.**

No. 61053.

Supreme Court of Iowa.

Aug. 30, 1978.

Richard C. Turner, Atty. Gen., and Julian B. Garrett, Asst. Atty. Gen., for appellant.

William E. Morrow, Jr., of Swarr, May, Smith & Andersen, Omaha, Neb., and David A. Scott, of Davis, Scott & Grace, Des Moines, for appellee First of Omaha Service Corp.

Kenneth L. Butters, of Stewart, Heartney, Brodsky, Thornton & Harvey, Des Moines, for appellee Central Nat. Bank & Trust Co.

MASON, Justice (By special assignment).

The principal issue presented for review in this appeal is whether the trial court was correct in holding that on the basis of the National Bank Act, 12 U.S.C., section 85, a national bank located in Omaha, Nebraska, may legally charge rates of interest allowed by the laws of Nebraska on loans made to Iowa residents, even though such rates are in excess of the amounts allowed under Iowa law.

12 U.S.C., section 85, in pertinent parts is as follows:

"Any association [national bank] may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of State, Territory, or District where the bank is located * * * and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter."

This case involves an action brought by the Attorney General seeking an injunction preventing defendants from assessing or collecting a finance charge in excess of that permitted by the Iowa Consumer Credit Code, chapter 537 (ICCC).

Defendant, Central National Bank & Trust Company (Central National) is a national bank located in Iowa. Defendant, First of Omaha Service Corporation (First of Omaha), a Nebraska corporation, is a wholly owned subsidiary of First National Bank of Omaha with its principal place of business in Omaha. It is authorized to, and in fact does, transact business in the State of Iowa.

Defendants are participants in the Bank Americard program. The Bank Americard plan is a national and international credit card system which enables a card holder to purchase goods and services on credit from participating merchants throughout the United States and the world.

The First National Bank of Omaha, which is not a defendant herein, is a national bank located in Omaha, Nebraska, is a card issuing member in the Bank Americard plan, and as such has issued cards to Iowa residents who qualify for them.

Central National, though it does not have authority to issue credit cards or extend credit directly in connection with Bank Americard transactions, does advertise the

Bank Americard plan and solicits applications for Bank Americard which are then forwarded to the First National for acceptance or rejection and Central serves as a depository for Bank Americard sales forms deposited by participating merchants with whom First of Omaha has member agreements.

First of Omaha participates in the system by entering into agreements with merchants and banks in Iowa which govern their participation in the system.

Iowa card holders wishing to purchase goods and services or obtain cash loans, sign a Bank Americard form which is authenticated by the card holder's Bank Americard credit card, and exchange the signed form for goods and services or cash from the merchant or bank respectively. These forms are then deposited by the participating merchant in his account with Central National Bank or a similarly functioning bank which then forwards them to First National Bank of Omaha.

Plaintiff, as Attorney General of Iowa, is administrator of the ICCC and is authorized to bring actions to restrain people from violating the act which authorizes temporary relief.

November 1, 1974, plaintiff filed an action in the Polk District Court. His petition as amended is in two divisions. Division 1 seeks temporary and permanent injunctive relief to halt the following three activities of defendants: (1) assessing or collecting of finance charges in excess of the rate allowed by section 537.2402(3) of the ICCC; and (2) engaging in any future violations of sections 537.3205 or 537.2402 of the ICCC; and (3) assisting the First National Bank of Omaha in collecting finance charges which violate section 537.2402(3) of the ICCC. Division 2 of the petition seeks a declaratory judgment to the effect that the acts of defendants constitute a conspiracy to violate the National Bank Act, in particular 12 U.S.C., section 85, which provides that national banks may charge interest at the rate allowed by state law for state banks by the state where the loan is made.

Plaintiff also alleged in his petition as amended defendants had committed two other violations of the Iowa Consumer Credit Code. Plaintiff asserted defendants were assessing their Bank Americard customers a finance charge based on the balance owing at the beginning of the billing cycle without deductions for the payments or credits made during that cycle, in violation of section 537.2402(2), The Code. Plaintiff also claimed section 537.3205, The Code, was violated in that the interest rate was increased without the notice required by that section.

In a stipulation of facts, the parties agreed that the First National Bank of Omaha intended to assess a finance charge at the annual rate of 18 percent on credit extended between $500 and $999.99. Section 537.2402(3), The Code, limits the finance charge on such amounts to an annual rate of 15 percent.

Defendants filed separate answers. Central National generally denied the allegations of the petition and alleged in its answer that the credit extended to Iowa customers was extended outside of Iowa and in Nebraska, and, therefore, Nebraska law controlled. In its answer, defendant First of Omaha asserted 12 U.S.C., section 85, allowed a national bank to charge interest at a rate allowed by the laws of the state where the bank was located and that the rate charged by the First National Bank of Omaha, defendant's parent, as a national bank was legal under 12 U.S.C., section 85, since Nebraska law (section 8–820 Neb.Rev. Statutes, 1973 Supplement) allowed an annual maximum rate of interest of 18 percent to be charged on loans up to $1000.

On November 29, 1974, defendants had the case removed to federal district court, but on October 9, 1975, the case was remanded to the Polk District Court on the grounds that the federal court lacked subject matter jurisdiction. See *State of Iowa ex rel. Turner v. First of Omaha S. C.*, 401 F.Supp. 439 (S.D.Iowa 1975).

October 23, defendants filed an application for separate adjudication of law points, seeking a ruling, in part, that since 12

U.S.C., section 85, applied, Nebraska law controlled the interest that could be charged Iowa residents by the First National Bank of Omaha.

September 3, 1976, the court ruled in part the finance charge which could be assessed by First National Bank of Omaha was limited by the rate ceiling of the Iowa Consumer Credit Code. The court ordered an injunction, restraining defendants from imposing a finance charge of greater than 15 percent on loans between $500 and $1000 as required by Iowa law.

On September 10, defendants filed separate motions for a new trial and corrections of findings of fact and conclusions of law. Defendants stated that the same issue as to which state law should be applied to determine the legal rate of interest which a national bank could charge had been presented in *Fisher v. First Nat. Bank of Chicago*, 538 F.2d 1284 (7 Cir. 1976), cert. den., 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778, which involved an Illinois national bank and an Iowa borrower. In *Fisher*, the court ruled the law of Illinois controlled the interest rate which a national bank located in Illinois could charge borrowers who were Iowa residents.

On December 20, defendants each filed separate motions for summary judgment, both of which alleged that 12 U.S.C., section 85, mandated Nebraska law was applicable. Plaintiff resisted on the grounds that federal law should be interpreted to put national banks on the same footing as other lenders making loans in Iowa and not to give national banks located outside of Iowa superiority over all other lenders.

On July 6, 1977, the court granted defendants' motions for summary judgment concluding the *Fisher* case provided sufficient legal precedent for such an action. It is this ruling which gives rise to plaintiff's appeal.

I. Plaintiff contends First National Bank of Omaha's imposition of a finance charge at an annual rate of 18 percent on amounts between $500 and $999.99 is illegal under section 537.2402(3), The Code, which provides:

"3. If the billing cycle is monthly, the charge may not exceed an amount equal to one and one-half percent of that part of the maximum amount pursuant to subsection 2 which is five hundred dollars or less and one and one-fourth percent of that part of the maximum amount which is more than five hundred dollars. If the billing cycle is not monthly, the maximum charge for the billing cycle shall bear the same relation to the applicable monthly maximum charge as the number of days in the billing cycle bears to three hundred sixty-five divided by twelve. A billing cycle is monthly if the closing date of the cycle is the same date each month or does not vary by more than four days from the regular date."

Defendants, on the other hand, contend Iowa law is not applicable to determine the legal rate of interest which First National Bank of Omaha can impose as a finance charge on the Bank Americard accounts it has with Iowa residents.

This contention is based on defendants' argument that the legal rate which First National Bank of Omaha can charge must be determined under Nebraska law in light of the National Bank Act, 12 U.S.C. section 85, the pertinent part of which has heretofore been set out. They maintain that since First National Bank of Omaha is located in Nebraska, Nebraska law is applicable. Under section 8–820, Neb.Rev.Statutes, 1973 Supplement, a Nebraska bank can charge a finance charge at the annual rate of 18 percent on accounts between $500 and $999.99. Defendants further argue that since First National Bank of Omaha, the parent corporation of First of Omaha, is a national bank, the interest rate it can charge is controlled by 12 U.S.C., section 85.

The contentions of the parties present the problem whether section 85 requires that Nebraska law must be applied to determine the legal interest rate that a Nebraska based national bank can charge Iowa residents or whether Iowa law can be applied to determine the rate of interest which can be charged to Iowa residents.

The Seventh Circuit Court of Appeals interpreted 12 U.S.C., section 85, in *Fisher v. First Nat. Bank of Chicago,* 538 F.2d at 1291. The question presented in the cited case was whether Illinois or Iowa law controlled the legal interest rate an Illinois based national bank could charge Iowa residents. A national bank located in Illinois was charging Iowa residents on the unpaid balances of their Bank Americard accounts a finance charge which was legal in Illinois. The court stated that under section 85, " * * * Illinois' 18% per annum statute applies *to all* loans made by the defendant Illinois national banking association, whether made in Illinois or elsewhere, but if the defendant is 'existing' in Iowa and if Iowa allowed, which it apparently does not, a rate of interest to its own state banks in excess of 18%, the defendant could charge such higher rate to the defendant's customers in Iowa." (Emphasis in original).

In reaching the foregoing conclusion, the court rejected an interpretation of section 85 reached in *Meadow Brook National Bank v. Recile,* 302 F.Supp. 62, 75 (E.D.La.1969), where that court held, "12 U.S.C. § 85 fixes the rate of interest chargeable by a national bank only as to loans made in the State where the bank is located; it does not fix the rate of interest which may be charged by a national bank which is located in one state and makes loans in another."

The Seventh Circuit, 538 F.2d at 1290–1291, in refusing to follow this view said:

"We are not inclined to so twist the plain meaning of the statute. It clearly states that the interest on 'any loan' is governed by the rate allowed by the state 'where the bank is located,' which in this case is Illinois."

In *Fisher v. First Nat. Bank of Omaha,* 548 F.2d 255, 258 (8 Cir. 1977), the court was faced with another action similar to the one faced by the Seventh Circuit except it was the First National Bank of Omaha which was charging interest rates allowable under Nebraska law to Iowa residents on unpaid balances in Bank Americard accounts the bank had with Iowa residents. The Eighth Circuit agreed with the Seventh

Circuit's holding in *Fisher v. First Nat. Bank of Chicago* and ruled, " * * * it is clear that the bank is entitled to charge on these transactions the highest permissible Nebraska rate for the same class of loan regardless of whether the loan is made in Nebraska or Iowa since the maximum rate allowable in Iowa is no higher than the maximum rate allowable in Nebraska. If Iowa permitted a higher rate, which it does not, the bank would be entitled to charge the higher rate."

The decisions in the two *Fisher* cases are a result of the rationale that the purpose of 12 U.S.C., section 85, was to give national banks competitive equality with other state lenders and to prevent the states from discriminating against national banks. In *Fisher v. First Nat. Bank of Omaha,* 548 F.2d at 259, the Eighth Circuit Court of Appeals stated:

"12 U.S.C. § 85 was designed by Congress to place national banks on a plane of at least competitive equality with other lenders in the respective states, and, indeed, to give to national banks a possible advantage over state banks in the field of interest rates. Thus, a national bank is not limited to the interest rate that a state bank may charge with respect to a particular type of loan if another lender in the state is permitted to charge a higher rate of interest on the same type of loan. In that situation the national bank may charge the higher rate. This 'most favored lender' doctrine was recognized by the Supreme Court in *Tiffany v. National Bank of Missouri,* 18 Wall. (85 U.S.) 409, 21 L.Ed. 862 (1873), and it was discussed and applied by this court in First Nat'l Bank in *Mena v. Nowlin,* 509 F.2d 872 (8th Cir. 1975)."

Plaintiff in response maintains that if, as defendants insist, the First National Bank of Omaha should be allowed to charge a rate to Iowa residents which no other lender can legally charge, they are not arguing for equality but for superiority over *all* other lenders.

The problem in applying the rationale of the two *Fisher* cases was recognized in *Marquette Nat., Etc. v. First of Omaha Serv.,*

Minn., 262 N.W.2d 358. The Minnesota court was faced with the same issue as involved in the two *Fisher* cases. The Marquette National Bank of Minneapolis sought to enjoin the First National Bank of Omaha and its subsidiary, First of Omaha Service Corporation, a defendant in this case, from issuing Bank Americard credit cards and operating in Minnesota since the First National Bank of Omaha was operating its Bank Americard business in contravention of the Minnesota Credit Card Act (Minn.Stat., section 48.185). The First National Bank of Omaha assessed a finance charge at the annual rate of 18 percent on unpaid balances under $1000 of Bank Americard accounts of Minnesota residents while section 48.185 only permitted an annual maximum rate of 12 percent on credit card accounts.

Since the First National Bank of Omaha was a party, the case was removed to the United States District Court for Minnesota. Marquette thereafter dismissed First National as a party defendant, resulting in the case being remanded back to the state district court because of lack of federal subject matter jurisdiction. The case then proceeded solely against First of Omaha.

The Minnesota court, Minn., 262 N.W.2d at 363, before reaching its conclusion, pointed out:

" * * * [W]e have a situation where the Eighth Circuit Court of Appeals, which includes the State of Minnesota, has adopted with approval the view of the Seventh Circuit that a national bank can charge its credit customers an interest rate allowable in the state where it is physically located, or the interest rate of the state where it is doing business, whichever is higher. At this point, the procedural history of this case assumes a greater importance. It appears fairly obvious that if the Omaha Bank had remained as a party defendant, the Federal District Court for Minnesota or for Nebraska would have followed the opinion of the Eighth Circuit."

The court followed the holdings of the two *Fisher* cases and ruled that First of Omaha could issue Bank Americard cards in Minnesota and charge interest rates allowed by Nebraska law. However, the court, Minn., 262 N.W.2d at 365, noted the following about the *Fisher* cases:

"The decisions reached in the *Fisher* cases injected a new attribute into the 'most favored lendor status,' which resulted in allowing the interstate shipment of interest rates by national banks in their credit card programs. This result is accomplished despite the fact that the individual state has attempted to specifically limit the interest rates allowable on certain loan transactions and its laws apply uniformly to all lending institutions within the state. Thus, by allowing a national bank to transport a given interest rate under these circumstances could afford it a distinct advantage in competing with state banking institutions, an advantage which appears to be contrary to the original purpose in adopting this particular section of the National Bank Act.

"However, we deem it inappropriate for this court to permit the use of procedural devices to obtain a result inconsistent with the existing doctrine in the Eighth Circuit. Consequently, we must reverse the district court's order which enjoins Omaha Service from operating the Omaha Bank's BankAmericard program by charging an interest rate in violation of § 48.185. Consistent with the reasoning in the *Fisher* cases, the Omaha Bank may assess an interest rate to its BankAmericard customers in Minnesota which complies with the applicable Nebraska statutory interest rate. See, Neb.Rev. Stat. § 8–820."

The procedural history described in *Marquette* which appears to have been a compelling reason for the result reached by the majority is not a factor to be considered in resolving the case before us.

May 22, 1978, the United States Supreme Court granted a petition for writ of certiorari in the *Marquette National Bank* case.

In *United Missouri Bank of Kansas City v. Danforth*, 394 F.Supp. 774 (W.D.Mo. 1975), cited by the Eighth Circuit in *Fisher*, 548 F.2d at 259, plaintiffs were all national banking associations created and operating

under the National Banking Act, 12 U.S.C., section 21, and were all located in the state of Missouri. In *Danforth* plaintiffs sought a declaratory judgment that the Missouri Retail Credit Sales Act was not applicable to plaintiffs' bank credit card system by reason of the provisions of 12 U.S.C., section 85. The question presented related to whether the provisions of the Act excepting licensees under chapter 367, RSMo, from the definition of "retail seller" or "seller" also excepts plaintiffs from that definition by operation of section 85 of Title 12.

We perceive no reason, at least at the present time, to disagree with the holding in the cited case. However, we call attention to the fact the credit transactions involved in *Danforth* were *intrastate* whereas in the case before us the transactions involved were *interstate.*

■ In considering the problem presented by this appeal we recognize the rate of interest that a national bank may charge is ultimately a question of federal law, and the matter is governed by 12 U.S.C., section 85. *Fisher v. First Nat. Bank of Omaha*, 548 F.2d at 257.

As indicated, Iowa enacted a Consumer Credit Code consisting of sections 537.1101 to 537.7103, which were added by the 1974 Regular Session, Sixty-fifth General Assembly, chapter 1250, sections 1.101 to 7.103, to become effective July 1, 1974. Section 537.2402(3) limits the finance charge on credit extended between $500 and $999.99 to an annual rate of 15 percent.

At the time of the occurrence of the events giving rise to the *Fisher* cases Iowa did not have the ICCC.

■ We must decide whether a national bank engaged in *interstate* business of credit card financing should be able to avoid the provisions of Iowa law relating to allowable interest rates.

Although we believe the dissent by Justice Scott in *Marquette*, concurred in by Justices Yetka and Wahl, presents a more rational approach to a resolution of the problem, we think there is merit in the majority's view in *Marquette* that the decision reached in the *Fisher* cases injected a new attribute into the "most favored lender status." In our opinion, this newly injected attribute, in the factual situation presented in the case before us, results in not only affording a national bank Nebraska lender a competitive equality with all other Iowa lenders including national banks located in this state in making similar types of loans in this state to Iowa residents, but it also results in affording a national bank Nebraska lender a superior advantage over all other lenders in competing for Bank Americard types of loans to be made in Iowa to Iowa residents which might well become "an unreasonable and destructive advantage" over all other lenders in this state.

The *Fisher* interpretation not only serves to permit a national bank Nebraska lender to assess the highest rate charged by any person or entity in Iowa under like conditions, but it also permits a national bank Nebraska lender to charge a higher rate than the maximum permitted by the ICCC for all lenders for similar loans.

This appears to us to be contrary to the original purpose in adopting section 85 of the National Bank Act which was to impose the same interest ceiling on national banks as on the most favored lenders in the state without giving them an unconscionable and destructive advantage over all other state lenders in making similar types of loans.

In light of the fact that since July 1, 1974, Iowa has had a Consumer Credit Code which it did not have at the time of the occurrence of the events giving rise to the *Fisher* cases, it is our opinion that to apply the *Fisher* courts' view as to the effect of 12 U.S.C., section 85, to *interstate* credit transactions is an unwarranted extension of the "most favored lender status." If we were to follow the *Fisher* decisions in resolving the problem presented here, we would be compelled to ignore the express public interest this state has in protecting its citizens from excessive finance charges. Application of the *Fisher* extension of 12 U.S.C., section 85, to *interstate* credit transactions would in effect cause that statute to pre-empt the Iowa Consumer Credit Code in

this area and carve for out-of-state national banks lenders an exception to the operation of the ICCC. Thus, as stated in somewhat different words, national bank lenders located outside Iowa would not only have "most favored lender status" in Iowa *but rights greater* than the most favored lender in this state.

It is our understanding the intended purpose of 12 U.S.C., section 85, was to insure *intrastate* competitive equality among state lenders and national banks. Consequently, we seriously doubt an interpretation of that statute which would exempt out-of-state national banks from state laws which are applicable to all lenders in a state should be adopted as the law of this state. We decline to do so.

In regard to defendants' concern that the foregoing view would somehow result in the ICCC becoming the law of Nebraska, we find such anxiety is without basis. We are not saying the ICCC governs lending institutions doing business in Nebraska. What we do say is that national bank Nebraska lenders must adhere to the interest ceiling applying to *all* lenders making loans in the state of Iowa to Iowa residents for similar types of credit.

The trial court erred in granting defendants' motion for summary judgment.

With directions to the trial court to set aside its order of July 6, 1977, granting defendants' motion for summary judgment and to reinstate its order of September 3, 1976, determining the merits of plaintiff's claim for relief and to proceed with such steps as may be necessary to carry out such order, the case is—Reversed and remanded.

All Justices concur except LeGRAND and REES, JJ., who dissent, and ALLBEE and McGIVERIN, JJ., who take no part.

LeGRAND, Justice (dissenting).

No matter how anxious we might be to "protect" Iowa credit-consumers from paying a higher rate of interest, the majority opinion is clearly contrary to the provisions of the applicable federal law governing interest rates chargeable by national banks.

(12 U.S.C. § 85). I agree with the Seventh Circuit Court of Appeals when it said, in discussing this same problem, any other result would be "to twist the plain meaning of the statute. *Fisher v. First National Bank of Chicago*, 538 F.2d 1284, 1290–91 (7th Cir. 1976), cert. den., 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778. The Eighth Circuit Court of Appeals reached the same conclusion in *Fisher v. First National Bank of Omaha*, 548 F.2d 255, 257 (1977), as did the Supreme Court of Minnesota—reluctantly but inevitably—in *The Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*, 262 N.W.2d 358 (Minn.1977).

Both the statute itself and the cases which have considered it (with one federal district court exception cited in the majority opinion) require a holding that Iowa interest rates do not limit what defendants may charge. I find it strange that the majority concedes this in one breath by saying the rate of interest to be charged is "ultimately a question of federal law" while in the next it refuses to apply the statute according to its plain dictates.

The majority seems to have adopted the State's argument that allowing defendants to charge a higher rate of interest gives them an advantage over other lenders. Really the contrary is true. Certainly there is no difficulty today in obtaining credit cards; the problem is to avoid getting them. If this is true, defendants should be at a disadvantage when they overprice their commodity—credit—in a highly competitive market. There are, indeed, many areas in which consumers need protection, but this is not one of them. See special concurrence in *Marquette National Bank* at 262 N.W.2d, page 365.

I would affirm the trial court.

REES, J., joins in this dissent.